■ In the Matter of the Claim of FRANK BERRAFATO, Appellant, against GRINNELL COMPANY, INC., Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by claimant from a decision of the Workmen's Compensation Board reversing a referee's decision which awarded compensation for disability arising out of an injury to the right middle finger. The issue presented is that of causal relationship between an accidental injury of March 14, 1951 and the supposed disability, variously diagnosed, existing on April 8, 1952, on which date causal relationship was first controverted. Compensation awarded to the latter date was paid and is not involved here. The injury was reported as a contusion. Claimant returned to work after five days and continued at his employment for some nine months, after which time he did not again work. His attending physician referred him to an orthopedic surgeon, whose diagnosis was capsular injury to the finger joints, and to a neurosurgeon who first diagnosed a neuroma, which an exploratory operation failed to confirm, and then a "neuropathy, digital nerve, digital branch of the medial nerve". The neuropathy was defined by the neurosurgeon as a "vague term" and as indicating, in this case at least, a condition in which the nerve does not function normally "in the sense it is hypersensitive to touch" and in which no pathological change explanatory of the symptoms could be demonstrated. Claimant was also referred to a neurologist and psychiatrist, who found causalgia, with an emotional overlay. An internist found causalgia as did the board's medical director. The attending physician related to the accident the condition which developed some months after it, which he said he was compelled to do in the absence of any previous history. The orthopedic surgeon testified, "He did have an injury and the sequence of events here must be related", but said, also, that he doubted the existence of neuritis and did not know "what his complaints are from". The neurosurgeon said that the neuropathy which he described could be the result of the injury. The internist and the board's medical director found the causalgia, diagnosed by them, related to the accident and the neurologist and psychiatrist was not questioned as to such connection. The degree of doubt and confusion in the medical evidence produced by claimant was such as to render highly important his

medical history prior to the accident of March 14, 1951. He reported an injury to his right hand, while at work for the same employer, on February 6, 1951 and was away from work one day. An X ray on March 5, 1951 disclosed no evidence of trauma. Originally claimant denied, while testifying and, also, while undergoing medical examinations, any previous injury to his right middle finger. It later appeared, however, that an injury to the same finger occurred in 1944 while claimant was working for another employer. Also in 1944, claimant claimed to have injured the same finger and to have sustained other injuries as the result of the jolting of a bus in which he was riding. When cross-examined as to this incident, claimant testified that he recovered in a couple of days. However, three doctors who examined or treated the finger injury sustained on the bus testified before the referee herein. One of them treated the finger injury until approximately a year after the bus accident and in June, 1947 testified on behalf of the present claimant on the trial of his action against the bus company. At or prior to that time, this doctor found a periarticular enlargement of the head of the third metacarpal, due to traumatic arthritis, which he said would be permanently painful and would cause a reduced ability to grip things. The second of these doctors examined claimant in 1945 following the bus incident and again in 1952 and related the condition of the finger which he observed in 1952 to the accident sustained on the bus in 1944, and the third doctor stated that the same finger joint was affected in 1944 as in 1952. A neurologist called by the carrier found claimant " not disabled from the neurological viewpoint " and felt there was " no relationship between the accident and the present problems ", which problem he considered " primarily that of confusion ". There was other medical testimony which denied the diagnosis of causalgia reached by two or more of the other physicians. On the entire proof the board was justified in finding claimant's proof unconvincing and we find the evidence against causal relationship of sufficient substance to support the board's finding that none exists. Further, and as has been noted, certain of claimant's medical experts quite frankly expressed doubts as to at least some aspects of the medical problem presented, claimant's experts were by no means in complete agreement, and much of the medical evidence was adduced before proof of respondents' version of the prior medical history. Under such circumstances the board was clearly justified in exercising its right to reject the testimony of claimant's experts and that of its own impartial expert. (*Matter of Moniot* v. *Empire State Wine Co.*, 282 App. Div. 899.) Appellant urges that prejudicial error occurred in the reception of testimony of the board's medical director, given on cross-examination in response to a hypothetical question based in part on a transcript of the testimony of Dr. Varco in the negligence action which has been referred to. There was uncertainty as to whether the transcript was in evidence before the referee and it was later discovered that it was not. Of course, it was not Dr. Varco's testimony on the trial that was important to the hypothesis propounded but his findings upon which his testimony was based and prior to the cross-examination of the medical director Dr. Varco had already testified before the referee as to his findings and prognosis upon examinations made at times subsequent to the prior accident and on the day preceding the trial. The hypothetical question also referred to a report of Dr. Blanco relative to the prior accident and that report is a part of the record here. Further, the medical director did not, in response to the hypothetical question, express a different opinion as to the causal connection which he originally found but said, logically enough, that different circumstances might compel a different opinion. Finally, however, he said, " I think there is no question but that he has a

disability attributable to the accident of March, 1951 and the subsequent treatment". Under these circumstances, the error was harmless. The board's findings, and its memorandum decision as well, refer to claimant's condition as a neuroma. As has been noted, this was the original diagnosis made by claimant's attending surgeon and was not confirmed on the subsequent operation. Appellant contends that the board's references to a neuroma indicate a misconception of the testimony so great as to require reversal. It is abundantly clear, however, that the intent and purport of the findings were to hold unrelated to the accident of March 14, 1951, and to the contusion then observed, the condition which allegedly caused claimant to stop working on December 11, 1951, whether that condition was neuroma or something else. The erroneous medical terminology applied to this purely negative finding was, therefore, not fatal to the result. We find unavailing, also, appellant's contention that the right to contest causal relationship of the operation of December 27, 1951, was waived by reason of the fact that respondent carrier authorized the operation and continued to pay compensation until April 6, 1952, when causal relationship was first controverted. Such relationship could not have been justifiably controverted on the medical proof adduced up to that time, none of which, of course, took into account the previous accidents and injuries which claimant concealed. In advancing the contention that the right to controvert was waived, appellant's brief asserts that the only question for the board's decision was whether disability after the time causal relationship was first controverted was related to the accident and the later operation. The clear effect of the board's decision was to determine this question adversely to claimant. We have found substantial evidence to support that determination and do not consider that any useful purpose would be served by remitting the case to the board for consideration and correction of its findings as respects this and the other matter of form and terminology above discussed. Decision unanimously affirmed, without costs. Present — Foster, P. J., Bergan, Coon, Zeller and Gibson, JJ.